**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---------------------------------------------------------------
|  |  |
|---|---|
| HIDDEN CITY PHILADELPHIA, | : |
|  | : |
| Plaintiff, | : CIVIL ACTION: |
| v. | : No. 2:18-cv-00065-JS |
|  | : |
| ABC, INC., | : |
|  | : |
| Defendant | : |
---------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT ABC, INC.'S MOTION TO DISMISS THE COMPLAINT**

BALLARD SPAHR LLP
Michael Berry (Pa. I.D. No. 86351)
Hara K. Jacobs (Pa. I.D. No. 74832)
Christie L. Larochelle (Pa. I.D. No. 322620)
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599

*Attorneys for Defendant ABC, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 1

    I.    Plaintiff Hidden City Philadelphia ...................................................................... 1

    II.   ABC's "Hidden Philadelphia" Videos ................................................................. 2

    III.  Hidden City's Complaint ...................................................................................... 3

ARGUMENT ....................................................................................................................... 4

    I.    Legal Standard ...................................................................................................... 4

    II.   The Trademark Claims Should Be Dismissed Because ABC's Use of the Title
        "Hidden Philadelphia" Is Protected by the First Amendment ............................. 4

        A.  The *Rogers v. Grimaldi* Test Applies to Plaintiff's Infringement Claims
             Arising from the Videos' Title ..................................................................... 4

        B.  Plaintiff's Infringement Claims Are Barred by the First Amendment
             Because the Title of ABC's Videos Is Directly Relevant to the Underlying
             Works and Is Not Explicitly Misleading .................................................... 7

    III.  Plaintiff's Claim Under 54 Pa. Cons. Stat. §§ 1123 & 1125 Should Be Dismissed
         Because Plaintiff Does Not Own a Registered Trademark in Pennsylvania ................... 10

    IV.  Count II of the Complaint Should Be Dismissed Because Plaintiff Has Not
         and Cannot Plead a Claim for Commercial Disparagement ............................................. 11

CONCLUSION .................................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)........................................................................................4

*Ciolli v. Iravani,*
  651 F. Supp. 2d 356 (E.D. Pa. 2009) ...............................................................2

*City of Pittsburgh v. West Penn Power Co.,*
  147 F.3d 256 (3d Cir. 1998).............................................................................11

*Dillinger, LLC v. Electronic Arts, Inc.,*
  2011 WL 2457678 (S.D. Ind. June 16, 2011) ..................................................8

*E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.,*
  547 F.3d 1095 (9th Cir. 2008) .........................................................................7

*Eastland Music Group, LLC v. Lionsgate Entertainment, Inc.,*
  2012 WL 2953188 (N.D. Ill. July 19, 2012)....................................................6

*ETW Corp. v. Jireh Publishing, Inc.,*
  332 F.3d 915 (6th Cir. 2003)............................................................................8

*Fowler v. UPMC Shadyside,*
  578 F.3d 203 (3d Cir. 2009).............................................................................4

*Gelman v. State Farm Mutual Automobile Insurance Co.,*
  583 F.3d 187 (3d Cir. 2009).............................................................................4

*Hart v. Electronic Arts, Inc.,*
  717 F.3d 141 (3d Cir. 2013).............................................................................5

*Knit With v. Knitting Fever, Inc.,*
  2010 WL 3792200 (E.D. Pa Sept. 28, 2010) ...................................................12

*Mattel, Inc. v. MCA Records, Inc.,*
  296 F.3d 894 (9th Cir. 2002) ...........................................................................6

*Medina v. Dash Films, Inc.,*
  2016 WL 3906714 (S.D.N.Y. July 14, 2016)..............................................9, 10

*Parks v. LaFace Records,*
  329 F. 3d 437 (6th Cir. 2003) ..........................................................................6

*Pro Golf Manufacturing v. Tribune Review Newspaper Co.*,
  809 A.2d 243 (Pa. 2002) ........................................................................................11

*Pryor v. National Collegiate Athletic Association*,
  288 F.3d 548 (3d Cir. 2002).....................................................................................2

*Radiance Foundation, Inc. v. NAACP*,
  786 F.3d 316 (4th Cir. 2015) ...................................................................................6

*Rebellion Developments Ltd. v. Stardock Entertainment, Inc.*,
  2013 WL 1944888 (E.D. Mich. May 9, 2013).......................................................8, 9

*Regis Insurance Co. v. A.M. Best Co.*,
  606 F. App'x 39 (3d Cir. 2015) ..............................................................................12

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989)........................................................................... *passim*

*Roxbury Entertainment v. Penthouse Media Group, Inc.*,
  669 F. Supp. 2d 1170 (C.D. Cal. 2009) ...................................................................8

*Schad v. Borough of Mt. Ephraim*,
  452 U.S. 61 (1981).....................................................................................................4

*Seale v. Gramercy Pictures*,
  949 F. Supp. 331 (E.D. Pa. 1996) .......................................................................6, 8

*Snyder v. Phelps*,
  562 U.S. 443 (2011)...................................................................................................4

*Stewart Surfboards, Inc. v. Disney Book Group, LLC*,
  2011 WL 12877019 (C.D. Cal. May 11, 2011) ..................................................8, 10

*Synthes, Inc. v. Emerge Medical, Inc.*,
  2014 WL 2616824 (E.D. Pa. June 11, 2014).........................................................11

*University of Alabama Board of Trustees v. New Life Art, Inc.*,
  683 F.3d 1266 (11th Cir. 2012) ...............................................................................6

*Valencia v. Universal City Studios LLC*,
  2014 WL 7240526 (N.D. Ga. Dec. 18, 2014)...................................................6, 8, 9

*Westchester Media v. PRL USA Holdings, Inc.*,
  214 F.3d 658 (5th Cir. 2000) ...................................................................................6

*Woodard v. Jackson*,
  2004 WL 771244 (S.D. Ind. Mar. 25, 2004)...........................................................8

*Zerpol Corp. v. DMP Corp.*,
    561 F. Supp. 404 (E.D. Pa 1983) ...........................................................................................12

**STATUTES**

54 Pa. Cons. Stat.
    § 1123..........................................................................................................................10
    § 1125..........................................................................................................................11

**OTHER AUTHORITIES**

RESTATEMENT (SECOND) OF TORTS § 652......................................................................................12

## INTRODUCTION

Defendant ABC, Inc. produced a series of videos about little-known historic places in Philadelphia.  Those videos are titled "Hidden Philadelphia."  They are posted on the website of ABC's local television station (6ABC), feature the 6ABC logo, and state that they are "presented by the Philadelphia Zoo."  Plaintiff, a self-described "tiny" non-profit organization called Hidden City Philadelphia, claims that the title of the ABC videos infringes and dilutes its unregistered yet "famous" trademark "Hidden City Philadelphia."  Plaintiff also claims that ABC commercially disparaged it by using the title "Hidden Philadelphia."

These claims are not viable as a matter of law.  Plaintiff's state law claims for trademark infringement and dilution are barred by the First Amendment.  ABC's use of the title "Hidden Philadelphia" for a video series about rare places in Philadelphia is artistically relevant and not explicitly misleading.  Plaintiff's claim for commercial disparagement fails because it cannot meet an essential element:  ABC did not make any false statement of fact about Hidden City or its products, which is the gravamen of a commercial disparagement claim.

Because Plaintiff cannot plead claims for trademark infringement, trademark dilution, or commercial disparagement, its Complaint should be dismissed.  And, because these legal deficiencies cannot be rectified by further amendment, the dismissal should be with prejudice.

## STATEMENT OF FACTS

### I.   Plaintiff Hidden City Philadelphia

Hidden City is a "tiny" non-profit organization that "specializes in the production of news stories about historic places not commonly known to the general public in Philadelphia."  Compl. ¶¶ 1, 3, 14, Dkt. 1-4.  Since 2005, it has been using the "famous 'Hidden City Philadelphia' mark" on "product packaging," including on t-shirts and promotional materials.  *Id.* ¶ 21.  Although Hidden City claims that it "has invested enormous amounts of time, effort,

and money in developing and marketing its products and services," the organization has not registered the mark "Hidden City Philadelphia." *Id.* ¶¶ 27, 28, 31.  And, as Hidden City acknowledges, its two most well-known ventures do not use that name.  In 2009 and 2013, it produced a festival called the "Hidden City Festival." *Id.* ¶¶ 6, 7.  In 2011, it started a "journalism website." *Id.* ¶ 7.  That website is called "Hidden City Daily." *Id.* ¶ 3 & Ex. A.

## II.     ABC's "Hidden Philadelphia" Videos

In September 2016, a television producer emailed Hidden City's project director, informing him that ABC's local Philadelphia television station, 6ABC, was producing videos called "Hidden Philadelphia" about "little-known places in the city."  Compl. ¶ 10 & Ex. B.  The producer asked the project director for contact information to gain access to "a rare, historic location" in Philadelphia.  *Id.*

Nearly a year later, one of Hidden City's co-editors "discovered" that ABC had posted "a series of videos on its [6ABC] website called 'Hidden Philadelphia.'" *Id.* ¶¶ 13, 14.  Those videos are "about a host of rare, historic locations in Philadelphia that were not commonly known to the general public." *Id.* ¶ 13.  True and correct copies of the ABC videos are attached to the accompanying Declaration of Hara Jacobs ("Jacobs Decl.").  *We encourage the Court, before reading further, to view each video.*[1]

Each ABC video follows the same format.  Each shows footage of "rare, historic locations in Philadelphia," Compl. ¶ 13, and is narrated through text appearing on screen.  Each video begins with the same introduction:  "There are mysteries everywhere.  You just have to

---

[1] *See, e.g.*, *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) ("documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered" on motion to dismiss (citation omitted)); *Ciolli v. Iravani*, 651 F. Supp. 2d 356, 373-74 nn.5-6 (E.D. Pa. 2009) (considering on motion to dismiss copies of news articles referenced in complaint to support plaintiff's defamation claim).

know where to find them.  Hidden Philadelphia.  Presented by Philadelphia Zoo."  Jacobs Decl.

¶¶ 2-9 & Exs. 1-8.  Meanwhile, the video shows the Philadelphia "Zoo Balloon" prominently

featuring the 6ABC logo.

Each video then depicts its subject matter.  For example, one titled "Hidden Philadelphia:

Underneath the Street" describes what can be found underneath an old street in Philadelphia.  *Id.*

¶ 4 & Ex. 3.  Following the standard introduction, the video's narration states, in its entirety:

> Philadelphia is a city full of history, right down to the pavement.  Between
> Walnut and Locust lies a typical one-lane street.  But there's a story just beneath
> the surface.  To quiet the clatter of horsehooves in 1917, the city swapped out
> standard stone for wooden blocks.  And they're still hidden here.  In 2015, the
> decaying wood was sealed in asphalt to preserve it.  There are plans to re-create
> the little wooden block street.  Someday . . . Hidden Philadelphia.  Presented by
> Philadelphia Zoo.

*Id.* Ex. 3.  Another video, titled "Hidden Philadelphia:  Billy Penn's Hat," reveals the "surprising

history" about the famed statue atop City Hall:  "In Penn's hat were actually TV, police, and

radio antennae."  *Id.* Ex. 6.  The subjects of the other videos range from underground pools at the

Fairmont Water Works to Solitude House deep inside the Philadelphia Zoo to a sculpture located

one mile into Laurel Hill Cemetery.  *Id.* Exs. 2, 7, 4.

## III.    Hidden City's Complaint

In its Complaint, Plaintiff claims that ABC's "Hidden Philadelphia" videos

"appropriate[d] the name of [ABC's] news competitor" – Hidden City Philadelphia.  Compl.

¶ 15.  Specifically, Plaintiff contends that, through the "Hidden Philadelphia" videos, ABC

diluted and infringed its alleged mark "Hidden City Philadelphia" and harmed Plaintiff's

"reputation and goodwill."  *E.g.*, *id.* ¶¶ 33, 34, 36, 37, 40.  The lawsuit advances statutory claims

under the Pennsylvania Trademark Act, 54 Pa. Cons. Stat. §§ 1101, 1123, 1124, and 1125, s*ee*

*id.* ¶¶ 45-50, and a claim for commercial disparagement based on the theory that ABC "falsely

3

communicated to consumers that [Hidden City] . . . [was] providing the aforementioned videos."
*Id.* ¶ 52.  For the reasons detailed below, Plaintiff's claims fail as a matter of law.

**ARGUMENT**

**I.     Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) requires a court to dismiss a complaint if it does
not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible
on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007)).  In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the
Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal
conclusions."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  "A claim has
facial plausibility when the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged."  *Gelman v. State
Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

**II.    The Trademark Claims Should Be Dismissed Because ABC's Use
        of the Title "Hidden Philadelphia" Is Protected by the First Amendment**

**A.     The *Rogers v. Grimaldi* Test Applies to Plaintiff's
        Infringement Claims Arising from the Videos' Title**

It is axiomatic that the First Amendment protects speech ranging from news to
entertainment.  *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 451-53 (2011) ("speech on 'matters of
public concern' . . . is 'at the heart of the First Amendment's protection,'" and such speech
includes matters of "legitimate news interest" and "of general interest and of value and concern
to the public'" (citations omitted)); *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 65 (1981)
("Entertainment, as well as political and ideological speech, is protected; motion pictures,
programs broadcast by radio and television, and live entertainment, such as musical and dramatic
works fall within the First Amendment guarantee.").  For this reason, in assessing infringement

4

claims brought against works protected by the First Amendment, courts must ensure that the constitutional protections of the First Amendment are properly balanced against the rights of intellectual property owners. *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989); *see also Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 150 (3d Cir. 2013).

The seminal case of *Rogers v. Grimaldi* addressed the proper balance between a claim for trademark infringement and the protection afforded by the First Amendment to the titles of films and other works. In *Rogers*, film star Ginger Rogers alleged that the use of her name in the title of Federico Fellini's film "Ginger and Fred" infringed her federal and common law rights in her name. *Rogers*, 875 F.2d at 997. The film was not about Ginger Rogers and Fred Astaire but two fictional Italian cabaret performers who earned livings by imitating Rogers and Astaire. *Id.* at 996-997.

In analyzing Rogers' claim, the Second Circuit emphasized the importance of titles for artistic works and the constitutional protection they require:

> The artistic and commercial elements of titles are inextricably intertwined. Film-makers and authors frequently rely on word-play, ambiguity, irony, and allusion in titling their works. Furthermore, their interest in freedom of artistic expression is shared by their audience. The subtleties of a title can enrich a reader's or a viewer's understanding of a work. Consumers of artistic works thus have a dual interest: They have an interest in not being misled and they also have an interest in enjoying the results of the author's freedom of expression. For all these reasons, the expressive element of titles requires more protection than the labeling of ordinary commercial products.

*Id.* at 998.

Ultimately, the Second Circuit held that the First Amendment precluded Rogers' infringement claims because: (1) the title had some "artistic relevance to the underlying work"; and (2) the title was not "explicitly mislead[ing] as to the source or the content of the work." *Id.* at 999. As the court explained, if there is no "overt indication of authorship or endorsement,"

any risk that use of a name "might implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression."  *Id.* at 999-1000.

Following the Second Circuit's decision, courts faced with federal and state law trademark infringement claims based on the title of a work have consistently applied the two-part test from *Rogers*.  *See, e.g.*, *Radiance Found., Inc. v. NAACP*, 786 F.3d 316, 328-29 (4th Cir. 2015) (applying *Rogers* and dismissing claim that title of online article infringed NAACP trademark); *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) (applying *Rogers* to infringement and common law right of publicity claims arising from rap group's reference to Rosa Parks in the title of a song); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002) (applying *Rogers* and affirming dismissal of infringement claims by the owner of the Barbie doll against the song "Barbie Girl" because the song title was relevant to the underlying work and did not explicitly mislead as to the source of the work); *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658 (5th Cir. 2000) (applying *Rogers* to claim for trademark infringement arising from magazine title); *Valencia v. Universal City Studios LLC*, 2014 WL 7240526, at *8 (N.D. Ga. Dec. 18, 2014) (applying *Rogers* following the Eleventh Circuit's adoption of the test in *Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012) and dismissing common law trademark infringement claim arising from the title of a film); *Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*, 2012 WL 2953188, at *3 (N.D. Ill. July 19, 2012) (applying *Rogers* and dismissing infringement claims based on contention that the film title "50/50" infringed plaintiff's trademark PHIFTY-50), *aff'd*, 707 F.3d 869 (7th Cir. 2013).

Likewise, in this District, the *Rogers* test has been applied to bar claims arising from the use of plaintiff's name and persona to promote a film.  *Seale v. Gramercy Pictures*, 949 F. Supp.

331 (E.D. Pa. 1996).  In *Seale*, plaintiff Bobby Seale, the founder and chairman of the Black

Panther Party, asserted unfair competition, Lanham Act, and state law right of publicity claims

because the movie "Panther" used his name and likeness to advertise the film.  *Id.* at 332.  The

court applied the *Rogers* test and held that defendants' use of Seale's name and likeness to

promote the film did not infringe his rights.  *Id.* at 339-40.  The court reasoned that because the

use of Seale's name related to the content of the film and defendants made no explicit suggestion

that Seale endorsed or sponsored the film, defendant's conduct was not actionable as a matter of

law.[2]  *Id.* at 340.

### B.    Plaintiff's Infringement Claims Are Barred by the First Amendment Because the Title of ABC's Videos Is Directly Relevant to the Underlying Works and Is Not Explicitly Misleading

Applying the *Rogers* test, Plaintiff's claims should be dismissed because the title of

ABC's videos – "Hidden Philadelphia" – is (1) artistically relevant to the underlying works, and

(2) not explicitly misleading as to the source or content of the videos.  *Rogers*, 875 F.2d at 999.

The first element of the *Rogers* test, whether the title is artistically relevant to the

underlying work, presents a "low threshold of minimal artistic relevance."  *Rogers*, 875 F.2d at

999.  This low threshold is met as long as the title of the work is not "arbitrarily chosen just to

exploit the publicity value of" of the plaintiff's trademark.  *Id.* at 1001; *see also E.S.S. Entm't

2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) ("the level of relevance

merely must be above zero" to "merit First Amendment protection") (citation omitted).

The title "Hidden Philadelphia" is undeniably artistically relevant to the videos' subject

matter.  Indeed, Plaintiff concedes that the videos are "about a host of rare, historic locations in

---

[2] The court separately found that plaintiff's claims concerning the use of his name and likeness on the cover of a musical CD could proceed under the *Rogers* test because that use did not relate to the content of the musical CD.  *Id.*

Philadelphia that were not commonly known to the general public."  Compl. ¶ 13.  Thus, the first

element of the *Rogers* test is easily met.  *See, e.g.*, *Roxbury Entm't v. Penthouse Media Grp.,*

*Inc.*, 669 F. Supp. 2d 1170, 1173 (C.D. Cal. 2009) (holding that title of film "Route 66" is

artistically relevant to the underlying work even though the only relationship of the "Route 66"

interstate was that "[t]he 'story' unfolds at a roadside motel, to which the couple [who is 'on the

run'] pulls up in a red convertible in the opening scene of the movie."); *Valencia*, 2014 WL

7240526, at *8 (dismissing trademark infringement claims against film about hip hop dancer

"Honey Rockwell," holding title "Honey" was artistically relevant to protagonist's first name);

*Rebellion Devs. Ltd. v. Stardock Entm't, Inc.*, 2013 WL 1944888, at *5 (E.D. Mich. May 9,

2013) (dismissing trademark infringement claims against video game title, holding title

"Rebellion" had some artistic relevance because players could choose to align with "loyalist" or

"rebel" factions in the context of a civil war); *Woodard v. Jackson*, 2004 WL 771244, at *7 (S.D.

Ind. Mar. 25, 2004) (dismissing trademark infringement claims against album, holding the

challenged portion of the title, "Ripples and Waves," had the requisite degree of artistic

relevance to the album).

      The second element of the *Rogers* test requires that the title not be explicitly misleading

as to the source or content of the work.  *Rogers*, 875 F.2d at 1000.  A work's title is not

"explicitly misleading" absent an overt misrepresentation that the work originated with the

plaintiff.  *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 927 (6th Cir. 2003); *accord Stewart*

*Surfboards, Inc. v. Disney Book Grp., LLC*, 2011 WL 12877019, at *7 (C.D. Cal. May 11, 2011)

(stating that a work is "explicitly misleading" only if it contains an "explicit indication," "overt

claim," or "explicit misstatement"); *Dillinger, LLC v. Elec. Arts, Inc.*, 2011 WL 2457678, at *8

(S.D. Ind. June 16, 2011) ("Plaintiff points to no explicit misrepresentation—that fact alone is

dispositive of this issue") (citing *Rogers*, 875 F.2d at 999 and *E.S.S. Entm't 2000*, 547 F.3d at 1100-1101).

Here, the "Hidden Philadelphia" title accurately describes the content of ABC's videos – relatively unknown historic venues in the City of Philadelphia, such as the wooden blocks hidden underneath a street in Old City and the antennae hidden inside William Penn's hat. *See supra* at 3 (describing videos). Plaintiff has not pled, nor could it plead, any facts from which one could plausibly draw the conclusion that ABC is explicitly misleading the public about the source of the work. To the contrary, the title of the works – "Hidden Philadelphia" – does not even use Plaintiff's name – "Hidden City Philadelphia." And, the videos on their face belie any connection to Hidden City because they appear on the 6ABC website, feature the 6ABC logo, and state that the videos are "Presented by the Philadelphia Zoo."

Hidden City's bald allegations that ABC chose the "Hidden Philadelphia" title to "willfully" trade on Plaintiff's reputation, Compl. ¶48, does not save its claim in the face of the work itself. *See Rebellion Devs. Ltd.*, 2013 WL 1944888, at *6 (holding that a plaintiff's merely pleading that a defendant attempted to capitalize on plaintiff's goodwill is legally insufficient to defeat a motion to dismiss because the plaintiff must show an overt misrepresentation by the defendant).

Indeed, in an analogous case, a court granted a motion to dismiss federal and state law trademark infringement claims based on the alleged use of plaintiff's trademark in the title of a video. *Medina v. Dash Films, Inc.*, 2016 WL 3906714 (S.D.N.Y. July 14, 2016). Plaintiff, owner of the mark LOISAIDAS for a Latin band, sued defendants who created a series of videos titled "Loisaidas" that were set to music about a violent turf war for control of the Lower East Side's drug business. *Id.* at *1-2. The court first held that defendants' title was artistically

relevant to the videos because the term "Loisaidas" is Spanish slang for "lower east siders."  *Id.* at *5.  In applying the second element of the *Rogers* test, the court ruled that the title "Loisaidas" was not explicitly misleading, noting the complaint was devoid of allegations that defendants suggested plaintiff was affiliated with the work and "to the contrary, as evidenced by Exhibit D to the operative complaint, materials promoting the film prominently informed the reader that it was 'Executive Produced:  Dame Dash & Kanye West.'"  *Id.* at *5.

ABC's use of the title "Hidden Philadelphia" for its videos about relatively unknown historic locations in Philadelphia is artistic expression protected by the First Amendment.  Like the complaints in *Medina*, *Rebellion*, *Woodward*, and others, Plaintiff's Complaint should be dismissed at the 12(b)(6) stage because allowing trademark law to restrict ABC's artistic use of the title "Hidden Philadelphia" would impair its First Amendment rights.  *See, e.g.*, *Stewart Surfboards*, 2011 WL 12877019, at *7 (dismissing federal and state law infringement and dilution claims on a 12(b)(6) motion under the *Rogers* test).

## III.    Plaintiff's Claim Under 54 Pa. Cons. Stat. §§ 1123 & 1125 Should Be Dismissed Because Plaintiff Does Not Own a Registered Trademark in Pennsylvania

In Count I of its Complaint, Hidden City alleges trademark infringement and dilution in violation of the Pennsylvania trademark statute, 54 Pa. Cons. Stat. §§ 1101, 1123, 1124, and 1125.  The claims under Sections 1123 and 1125 should be dismissed because only owners of trademarks registered in the Commonwealth of Pennsylvania may sue under those sections.

Section 1123 provides for liability for trademark infringement for use "of a mark registered under this chapter."  54 Pa. Cons. Stat. § 1123.  Likewise, Section 1125 specifies the remedies available to "[a]ny owner of a mark registered under this chapter."  54 Pa. Cons. Stat. § 1125.  Hidden City has not pled that it owns a mark registered pursuant to Chapter 11 of Title 54 of the Pennsylvania statutes.  Indeed, a search of Pennsylvania's trademark registry reveals

that Plaintiff does not own such a registration.  *See City of Pittsburgh v. W. Penn Power Co.*, 147

F.3d 256, 259 (3d Cir. 1998) (court may take judicial notice of public records on motion to

dismiss).  As Hidden City is not the "owner of a mark registered" in the state of Pennsylvania, it

cannot state a claim for trademark infringement pursuant to 54 Pa. Cons. Stat. §§ 1123 and 1125,

and its claims under those sections should be dismissed with prejudice.

## IV.   Count II of the Complaint Should Be Dismissed Because Plaintiff Has Not and Cannot Plead a Claim for Commercial Disparagement

Hidden City's claim for commercial disparagement should be dismissed because it has

not and cannot plead the essential basis of the cause of action – the communication of a false

statement of fact about *Plaintiff's* business.  *See, e.g., Synthes, Inc. v. Emerge Med., Inc.*, 2014

WL 2616824, at *6 (E.D. Pa. June 11, 2014); *see also Pro Golf Mfg. v. Tribune Review

Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002).

Plaintiff's entire Complaint is premised on the allegedly infringing title of ABC's video

series "Hidden Philadelphia," not on a statement by ABC *about* the Hidden City organization.

*See* Compl. ¶¶ 32-43, 52.  Indeed, as alleged by Plaintiff in Count II of the Complaint, the sole

basis for the commercial disparagement claim is that ABC's use of "Hidden Philadelphia" in

"advertisements, signage, and other similar promotions . . . falsely communicated to consumers

that the Plaintiff" was the source of the videos.  Compl. ¶ 52.  Hidden City cannot transform an

alleged trademark infringement claim into a commercial disparagement claim by merely

slapping the label "commercial disparagement" on Count II of its Complaint.  Commercial

disparagement is a distinct state law tort.

To state a commercial disparagement claim, "the challenged publication, on its face, must

be 'directed against the goods or products of a corporate vendor.'"  *Synthes, Inc.*, 2014 WL

2616824, at *6 (quoting *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 924

11

(3d Cir. 1988)).  But, ABC did not make a false statement about Hidden City or its goods.  It simply titled its videos "Hidden Philadelphia."  Hidden City therefore cannot state a claim for commercial disparagement as a matter of law.  *See, e.g.*, *Regis Ins. Co. v. A.M. Best Co.*, 606 F. App'x 39, 42 (3d Cir. 2015) (affirming judgment as a matter of law in favor of defendant because "the words in the press release cannot be properly construed to" disparage plaintiff); *Knit With v. Knitting Fever, Inc.*, 2010 WL 3792200, at *8 (E.D. Pa Sept. 28, 2010) (holding that plaintiff's commercial disparagement claim was not viable as a matter of law because "these statements, in and of themselves, do not constitute commercial disparagement," as they had "no disparaging effect whatsoever on [plaintiff], either as an entity or on the goods and services it provided"); *Zerpol Corp. v. DMP Corp.*, 561 F. Supp. 404, 415 (E.D. Pa 1983) ("conclud[ing] as a matter of law that the advertisements cannot reasonably be interpreted as concerning [plaintiff] or its products" and thus dismissing commercial disparagement claim); *see also* RESTATEMENT (SECOND) OF TORTS § 652(1)(a) ("In an action for injurious falsehood, the court determines . . . whether the statement is capable of a disparaging or other injurious meaning").

Thus, Hidden City's commercial disparagement claim should be dismissed with prejudice.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety

with prejudice.

Date:  May 16, 2018                             Respectfully submitted,


By:   */s/Michael Berry*
      Michael Berry (Pa. I.D. No. 86351)
      Hara K. Jacobs (Pa. I.D. No. 74832)
      Christie L. Larochelle (Pa. I.D. No. 322620)
      BALLARD SPAHR LLP
      1735 Market Street, 51st Floor
      Philadelphia, PA 19103-7599
      215.665.8500
      berrym@ballardspahr.com
      jacobsh@ballardspahr.com
      larochellec@ballardspahr.com

      *Attorneys for Defendant ABC, Inc.*