IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HIDDEN CITY PHILADELPHIA | : | CIVIL ACTION |
| | : | |
| v. | : | No. 18-65 |
| | : | |
| ABC, INC. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                    **March 1, 2019**

Plaintiff Hidden City Philadelphia (Hidden City) alleges it is the owner of the mark "Hidden City Philadelphia" and brings statutory claims for trademark infringement and dilution under the Pennsylvania Trademark Act, 54 Pa. Cons. Stat. §§ 1123, 1124, and 1125, against Defendant ABC, Inc. (ABC) arising out of ABC's production and display of journalistic videos on its website about rare, historic locations in Philadelphia, Pennsylvania, titled "Hidden Philadelphia." ABC moves to dismiss the claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing the trademark infringement claim should be dismissed because Hidden City's trademark is not registered in Pennsylvania and both claims should be dismissed because its use of "Hidden Philadelphia" is protected by the First Amendment as a title of a creative work. The Court agrees and will grant ABC's motion.[1]

**BACKGROUND**[2]

Hidden City is a non-profit corporation that owns and operates a Philadelphia-based journalism website called "Hidden City Philadelphia" that publishes news stories about Philadelphia history, architecture, urban planning, and other similar topics. Compl. ¶ 3. Since

---

[1] Hidden City's Complaint also asserted a claim for commercial disparagement, which was voluntarily withdrawn during oral argument on ABC's motion to dismiss.

[2] Unless otherwise noted, all facts stated herein are drawn from Hidden City's Complaint, which are construed in the light most favorable to Hidden City. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

2005, it has used the "Hidden City Philadelphia" name on product packaging, retail items, advertisements, and promotional materials. *See id.* ¶ 21. "In 2009, [Hidden City] hosted the first iteration of its history and architecture festival called the 'Hidden City Festival,' which included tours and artistic performances in, and lectures about, a multitude of historic locations in and around the City of Philadelphia." *Id.* ¶ 6. Its festival received "extensive press acclaim and multiple awards." *Id.*

In 2016, a television producer from ABC's local television station, 6ABC, emailed Hidden City to inform it that ABC was producing a series of videos called "Hidden Philadelphia" about "interesting, quirky or little-known places in the city" and requested contact information to gain access to the "Kelly Natatorium at the Philadelphia Water Works, a rare, historic location" in Philadelphia. *Id.* ¶ 10 & Ex. B.

One year later, one of Hidden City's co-editors "discovered" that ABC had produced and posted "a series of videos on its [6ABC] website titled "Hidden Philadelphia." Compl. ¶ 13. Each video shows footage of "rare, historic locations in Philadelphia," *id.*, with narrating text passing through the screen, *see* Jacobs Decl. ¶¶ 2-9, Exs. 1-8.[3] Each video also begins with the same introduction, "There are mysteries everywhere. You just have to know where to find them. Hidden Philadelphia. Presented by Philadelphia Zoo," and shows the Philadelphia "Zoo Balloon" prominently featuring the 6ABC logo. *See* Jacobs Decl. ¶¶ 2-9, Exs. 1-8.

Each video then focuses on one subject. For example, one video titled "Hidden

---

[3] These videos were attached as exhibits to ABC's motion to dismiss. Although, generally, the Court may not look to matters outside the pleadings in resolving a motion to dismiss, documents attached to a defendant's motion to dismiss may be examined if they are referred to in the plaintiff's complaint and central to the plaintiff's claims. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

Philadelphia: Underneath the Street" describes what can be found underneath an old street in Philadelphia. *Id*. ¶ 4 & Ex. 3. Following the standard introduction, the video's narration states, in its entirety:

> Philadelphia is a city full of history, right down to the pavement. Between Walnut and Locust lies a typical one-lane street. But there's a story just beneath the surface. To quiet the clatter of horsehooves in 1917, the city swapped out standard stone for wooden blocks. And they're still hidden here. In 2015, the decaying wood was sealed in asphalt to preserve it. There are plans to re-create the little wooden block street. Someday . . . Hidden Philadelphia. Presented by Philadelphia Zoo.

*Id*. Ex. 3. Another video titled "Hidden Philadelphia: Billy Penn's Hat," reveals the "surprising history" about the famous statue of William Penn on top of Philadelphia's City Hall: "In Penn's hat were actually TV, police, and radio antennae." *Id*. Ex. 6. The subjects of the other videos range from underground pools at the Fairmont Water Works to Solitude House deep inside the Philadelphia Zoo to a sculpture located one mile into Laurel Hill Cemetery. *See id*. Exs. 2, 7, 4.

These videos form the basis of Hidden City's Complaint. Hidden City asserts ABC's use of the title "Hidden Philadelphia" in connection with these videos infringes on and dilutes its mark. ABC moves to dismiss these claims, arguing the trademark infringement claim fails because Hidden City's alleged trademark is not registered, and both the trademark infringement and dilution claims fail because they are barred by the First Amendment.

**DISCUSSION**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facts pleaded must support "more than a sheer possibility that a defendant has acted unlawfully"; they must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating a

motion to dismiss, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Twombly*, 550 U.S. at 557). In deciding a 12(b)(6) motion, the Court may not consider evidence proffered by any party but may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Pension Benefit Guar. Corp.*, 998 F.2d at 1196; *see Ciolli v. Iravani*, 651 F. Supp. 2d 356, 373-74 nn.5-6 (E.D. Pa. 2009) (considering on motion to dismiss copies of news articles referenced in complaint to support plaintiff's defamation claim).

ABC argues that Hidden City's trademark infringement claim brought pursuant to the Pennsylvania statute governing trademarks should be dismissed because the statute only provides a cause of action for trademarks that have been registered and Hidden City concedes its mark is not registered. The Court agrees. *See* 54 Pa. Cons. Stat. §§ 1112 (explaining how to file an application for trademark registration), 1123 (trademark infringement section explicitly referring to "a mark registered under this chapter"), 1125 (trademark statute's remedies section explicitly referring to "a mark registered under this chapter"). Hidden City relies on § 1126 of the statute and *Conti v. Anthony's Shear Perfection, Inc.*, 504 A.2d 1316 (Pa. Super. Ct. 1986), to argue that it need not register a trademark to proceed under the statute. This reliance is misguided, however, as § 1126 merely clarifies the Pennsylvania statute governing trademarks did not eliminate common law trademark rights and the *Conti* Court simply held that an unregistered or unregistrable trademark is nonetheless entitled to common law trademark protection under certain circumstances. Hidden City's trademark infringement claim thus fails because its mark is not registered.

Even if registration was not a requirement to assert a claim under the statute, the Court

agrees with ABC that Hidden City's trademark infringement claim is barred by the First Amendment. To sufficiently allege a trademark infringement claim under the Pennsylvania statute governing trademarks or the Lanham Act—the federal statute governing trademarks—a plaintiff must allege: "(1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods and services is likely to create confusion concerning the origin of the goods or services." *See Fetzer Co. v. Gehring*, 288 F.Supp. 2d 696, 703 n.7 (E.D. Pa. 2003) (noting that the federal and Pennsylvania statutes governing trademark infringement are "identical except that the Pennsylvania law narrows the focus to acts within the Commonwealth").[4] The First Amendment, however, may provide a defense against a trademark infringement claim when the title of an artistic work is the subject of such a claim. *See Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989). The Second Circuit established a framework to evaluate when the First Amendment provides such a defense in *Rogers v. Grimaldi*.

In *Rogers*, film star Ginger Rogers asserted the use of her name in the title of Federico Fellini's fictional film[5] "Ginger and Fred" violated the Lanham Act. 875 F.2d at 997. In analyzing Rogers's claim, the court explained artistic works, like films, deserve protection under the First Amendment, but also recognized these works may be used to deceive consumers because they are made available in the commercial marketplace. *See id.* at 999. To balance "the public interest in avoiding consumer confusion" against "the public interest in free expression," the court held that

---

[4] The federal statute has also been interpreted to apply to both registered and unregistered marks. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768-69 (1992) ("it is common ground that [the trademark infringement section of the Lanham Act] protects qualifying unregistered trademarks"). This additional distinction, however, is not relevant to the Court's analysis.

[5] The film itself was not about Ginger Rogers and actor Fred Astaire, who had performed in Hollywood musicals together, but "two fictional Italian cabaret performers" who "imitated Rogers and Astaire" and became known in Italy as "Ginger and Fred." *See Rogers*, 875 F.2d at 996-97.

5

the title of an artistic work receives First Amendment protection when it (1) has some "artistic relevance to the underlying work"; and (2) is not "explicitly mislead[ing] as to the source or the content of the work." *See id*. The Court then applied this test and found Rogers's federal trademark infringement claim was precluded by the First Amendment. *See id*.[6]

The first element of the *Rogers* test, whether the title is artistically relevant to the underlying work, is a "low threshold of minimal artistic relevance," which is met as long as the "title of the work is not arbitrarily chosen just to exploit the publicity value of" a plaintiff's trademark. *Rogers*, 875 F.2d at 999, 1001.

Hidden City argues that this element of the test is not met because "Hidden Philadelphia" is not artistically relevant to the content of ABC's videos. The Court disagrees. Although Hidden City contends the video about "Billy Penn's Hat" is not artistically relevant to the title because the "[statue] of Billy Penn, in the center of Philadelphia, at the top of City Hall, and visible for miles around . . . is hardly 'hidden,'" Opp. 5, this description of the video ignores the content of the video

---

[6] Although the *Rogers* test has been adopted by other Courts of Appeals to analyze trademark infringement claims based on the title of a work, *see, e.g.*, *Radiance Found., Inc. v. NAACP*, 786 F.3d 316, 328-29 (4th Cir. 2015) (applying *Rogers* to the title of online article); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002) (applying *Rogers* to the title of a song), the Third Circuit Court of Appeals has yet to adopt the test, *see Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 150 (3d Cir. 2013) (declining to apply *Rogers* to "general contents of a work"); *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1016 (3d Cir. 2008) (declining to apply *Rogers* to use of a narrator's voice in a television production). However, in *Facenda*, while declining to adopt *Rogers*, the Third Circuit suggested that its application should be limited to cases involving "titles" of works of artistic expression. 542 F.3d at 1016, 1018.

    The mark at issue involves a title, but the parties' briefs do not address the issue of whether the title is a work of artistic expression. *See Facenda*, 542 F.3d at 1016 ("Before considering whether either prong of the *Rogers* test applies . . . we must decide whether the [challenged work] is a work[ ] of artistic expression") (internal quotation marks and citation omitted). The Court agrees with both parties' implicit position, however, that the journalistic videos here qualify as works of artistic expression. *See Medina v. Dash Films, Inc.*, No. 15cv2551, 2016 WL 3906714, at *5 (S.D.N.Y. July 14, 2016) (finding series of short films about drug dealers to be an artistic work); *see also Rogers*, 875 F.2d at 997 ("Movies, plays, books, and songs are all indisputably works of artistic expression and deserve protection"). Application of the *Rogers* test to Hidden City's trademark infringement claim is thus appropriate.

itself, which reveals the "surprising" secret hidden inside Penn's hat: "TV, police, and radio antennae," Jacobs Decl. Ex. 6. Each video similarly showcases the City of Philadelphia's "hidden" or otherwise difficult-to-locate places—like wooden blocks underneath an old street, underground pools at the Fairmount Water Works, or Solitude House inside the Philadelphia Zoo—to which the title "Hidden Philadelphia" is directly relevant.

Hidden City's reliance on a voiceover in the videos that states, "There are mysteries everywhere. You just have to know where to find them," Opp. 5, to further argue the videos themselves reveal there is nothing hidden about the locations featured in them is similarly unavailing. That statement, when reviewed in context of the videos themselves, suggests that the City of Philadelphia is filled with little-known historic places if one knows where to look—not that the locations in the videos are easy to find.

Finally, Hidden City's reliance on *Parks v. LaFace Records*, 329 F.3d 437, 442 (6th Cir. 2003), to demonstrate that the title is not artistically relevant is misplaced. In *Parks*, the work at issue, a song titled "Rosa Parks," had only one line that could arguably be relevant to the historical figure Rosa Parks: "Everybody move to the back to the bus." 329 F.3d at 442. Importantly, in the song, that line was not actually about Rosa Parks but rather the band's attitude toward its competitors, which were regarded as lesser human beings. *Id*. at 456. The *Parks* Court found it "highly questionable" that the title of the song was artistically relevant to the work, but it reversed the district court's grant of summary judgment and remanded the case for a jury to determine the issue. *Id*. at 456, 458. Here, in contrast, the title "Hidden Philadelphia" is clearly artistically relevant for a series of videos that Hidden City itself alleges are about "rare, historic locations in Philadelphia that were not commonly known to the general public." *See* Compl. ¶ 13. Contrary to Hidden City's contention, the title easily meets the first element of the *Rogers* test.

7

The second element of the *Rogers* test requires that the title not be explicitly misleading as to the source or content of the work. *See Rogers*, 875 F.2d at 1000. A work's title is not "explicitly misleading" absent an "explicit indication," "overt claim," or "explicit misstatement" that causes consumer confusion. *See Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F. 3d 1192, 1199 (9th Cir. 2017) (internal citation and quotation marks omitted); *see also Univ. of Ala. Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1279 (11th Cir. 2012) (explaining that an incorrect inference that a plaintiff had some involvement with a defendant's work of artistic expression would not constitute a violation of the Lanham Act absent some explicit indication that the plaintiff was associated with the work); *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 937 (6th Cir. 2003) (same).

While Hidden City argues the title fails to meet this element because the videos "suggest[] inaccurate authorship," Opp. 4, it fails to cite any legal authority for this standard. Applying the correct standard, i.e., whether the title is explicitly misleading as to source or content, the Court finds this element of the *Rogers* test is also met. First, as noted above, the title of the videos accurately describes the content of the videos. Second, the title is not explicitly misleading as to its source because (1) it does not adopt Hidden City's name—Hidden *City* Philadelphia; (2) the Complaint contains no allegations to suggest Hidden City was affiliated with the videos[7]; and (3) the videos themselves appear on the 6ABC website, feature the ABC logo, and state they are

---

[7] Hidden City asserts that prior to producing the videos, ABC "consulted" with Hidden City about the subject matter of the videos. *See* Opp. 4. The Complaint, however, merely alleges that that one of ABC's producers reached out to Hidden City for contact information to access the Kelly Natatorium. *See* Compl. ¶10 & Ex. B. The Court fails to understand how this request for contact information suggests that the title of the videos explicitly misrepresents Hidden City as its source. *See Rogers*, 875 F.2d at 1001 (finding use of plaintiff's name in title of film not misleading as to source even where some consumers believed plaintiff involved with film); *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) ("mere use of a trademark alone cannot suffice to make such use explicitly misleading").

presented by the Philadelphia Zoo. *See Medina*, 2016 WL 3906714, at *5 (holding the title of short films was not explicitly misleading under the *Rogers* test when the complaint was devoid of allegations that defendants suggested plaintiff was affiliated with the work and "to the contrary, materials promoting the [videos] prominently informed the reader" who produced the work).

Because the title is "artistically relevant" and does not "explicitly mislead" as to the source or content of the videos, ABC's use of it is entitled to protection by the First Amendment under the *Rogers* test. Hidden City's trademark infringement claim based on the title is thus barred.

ABC also argues Hidden City's statutory trademark dilution claim should fail based on *Rogers*. To sufficiently state a trademark dilution claim under the Pennsylvania statute, which protects both registered and unregistered marks, a plaintiff must allege "(1) that its mark is famous; (2) that the defendant began using a mark in commerce after the plaintiff's mark became famous; and (3) that the defendant's use is diluting the value of the mark." *Stillwater Lakes Civic Assoc., Inc. v. Gorka*, No. 3-08-2264, 2009 WL 10685190, at *9 (E.D. Pa. Apr. 2, 2009) (citing 54 Pa. Cons. Stat. § 1124). Because Hidden City appears to concede the *Rogers* test applies to both claims, and the Court has found *Rogers* precludes Hidden City's trademark infringement claim, Hidden City's dilution claim also fails under *Rogers*. *Cf. Stewart Surfboards, Inc. v. Disney Book Grp., LLC*, No. 10-2982, 2011 WL 12877019 (C.D. Cal. May 11, 2011) (dismissing federal trademark dilution claim as precluded by *Rogers*); *see also Louis Vuitton Malletier and Oakley, Inc. v. Veit*, 211 F.Supp. 2d 567, 582 (E.D. Pa. 2002) (explaining that "the standard for establishing trademark dilution under Pennsylvania law is the same as under federal law.").

**CONCLUSION**

Hidden City's trademark infringement claim fails because its trademark is not registered in Pennsylvania. This claim fails for the additional reason that it is barred by the First Amendment as

9

is Hidden City's trademark dilution claim. ABC's motion to dismiss will thus be granted. An appropriate order follows.

BY THE COURT:


/s/   Juan R. Sánchez
Juan R. Sánchez, C.J.